*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MASTER BEAT, INC. and WALTER PALAMARCHUK,

Plaintiffs-Appellees,

v

MICHAEL SKILL,

Defendant-Appellant.

UNPUBLISHED
February 29, 2024

No. 363340
Oakland Circuit Court
LC No. 2021-189454-CB

Before: GADOLA, C.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

In this case arising from a business dispute, defendant appeals by right the trial court's orders granting summary disposition in favor of plaintiffs and granting to plaintiffs prejudgment interest, costs, and attorney fees. Defendant also challenges the order denying his motion for reconsideration or relief from judgment. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Defendant and plaintiff Walter Palamarchuk (Palamarchuk) are two of the original four members of the band The Romantics. Plaintiff Master Beat, Inc. (Master Beat), a Michigan corporation, was formed in 1984 to manage business affairs for the band. By the time this action was initiated, defendant and Palamarchuk were the only remaining officers of Master Beat. They each owned a 50% share of the company and served as co-directors. Palamarchuk was president of Master Beat and took primary responsibility for business operations of Master Beat. Defendant was secretary-treasurer and had a lesser role in the operations of Master Beat. There was apparently an agreement that defendant and Palamarchuk were supposed to switch roles each year, although they seemingly abandoned that arrangement. Defendant described their division of responsibilities as somewhat "ambiguous."

As relevant to this litigation, Master Beat had contractual agreements with Sony Music Publishing, SoundExchange, and K-Tel International Ltd. (K-Tel) generally providing that royalties related to The Romantics would be paid to Master Beat. Master Beat, in turn, would distribute those royalties as appropriate according to various separate contractual agreements to

-1-

various past and present band members, including defendant and Palamarchuk.[1]  Master Beat employed other individuals to calculate the royalties Master Beat was required to distribute to various other individuals from the royalties Master Beat received.  In addition to its obligations to distribute royalties, Master Beat also had other bills and expenses that were paid from its revenue.  Master Beat's revenue consisted of royalty payments and revenue generated from The Romantics' concert performances.

Beginning in late 2020, defendant took steps to change the above described distribution procedure by diverting royalties to himself that were being paid to Master Beat pursuant to the previously mentioned contracts.  Defendant believed that he should be able to get his royalties directly from the companies paying them, without having the royalties first flow through Master Beat.  He also testified that he believed he was authorized to act unilaterally on behalf of Master Beat to effectuate such changes.  It is not entirely clear from the record, but it seems that defendant received approximately $26,700 in royalties from Sony after making his request and before Master Beat became aware of the change and took action to object, and there is also evidence suggesting that defendant received approximately $30,000 in royalty payments from K-Tel before Master Beat became aware of the issue and intervened.  It appears that defendant's efforts were unsuccessful with respect to SoundExchange, and that he did not receive any payments from SoundExchange, because SoundExchange put a hold on the accounts related to The Romantics until the parties resolved their conflicting claims about the treatment of royalties.

Furthermore, there is additional record evidence that defendant personally withdrew $20,000 from a bank account belonging to Master Beat in July 2021.  Defendant, according to his deposition testimony, was seemingly disgruntled about the manner in which royalties were being distributed and apparently felt that the $20,000 represented royalties to which he was personally entitled.  He believed he was actually entitled to more than this amount, but he left some money in the account "for bills."

On August 10, 2021, plaintiffs initiated this action, seeking to remove defendant as a director of Master Beat and alleging claims of breach of fiduciary duty, unjust enrichment, common-law conversion and embezzlement, and statutory conversion.

Plaintiffs moved for summary disposition under MCR 2.116(C)(10) on February 18, 2022, arguing that there was no question of material fact that defendant diverted royalties from Master Beat to himself and took $20,000 from the Master Beat bank account without authority.  Plaintiffs

---

[1] It appears that a complete picture of the distribution arrangements regarding royalties, including those due to various past members, is somewhat complex.  Those nuances are not relevant for purposes of resolving the instant appeal.  We have merely set forth the general nature of the arrangements for purposes of providing factual context, and we do not purport to have precisely described the many intricacies of the distribution scheme for royalties created by the various contractual agreements involving Master Beat.  For purposes of this appeal, it is only necessary to understand that Master Beat essentially collected royalties on behalf of The Romantics and then distributed those royalties to various individuals, including defendant, according to those individuals' rights to specific royalties.

argued that defendant's actions rendered him liable for common-law and statutory conversion,[2] breach of fiduciary duty, and unjust enrichment, and, additionally, that defendant's removal as a director was warranted. The trial court entered a scheduling order directing defendant to respond to plaintiffs' motion for summary disposition by April 1, 2022. The trial court's scheduling order stated that the court would strictly enforce the scheduling order and that failure to timely file a responsive brief would result in the court assuming that the party did not have any authority to support its position.

On April 1, 2022, defendant filed a motion to file his brief in opposition and accompanying exhibits under seal. Defendant served his brief on the opposing parties and the court, but he did not file it so as to avoid making it public while waiting for the court's ruling on the motion to file under seal. Because defendant did not notice his motion for a hearing, confusion ensued. Nonetheless, the trial court ultimately entered orders on May 25, 2022, granting plaintiffs' motion to supplement their motion for summary disposition by May 27, 2022, and permitting defendant to file a response to plaintiffs' motion for summary disposition as supplemented pursuant to an updated scheduling order. Additionally, the trial court had granted defendant's counsel's motion to withdraw on April 18, 2022, which was predicated on defendant's consistent failure to pay his legal fees. Plaintiffs filed their supplemental motion for summary disposition on May 25, 2022.[3]

On May 26, 2022, defendant's new counsel filed an appearance and the trial court entered an updated scheduling order. The scheduling order required defendant to file his response by June 29, 2022. The order further required any motion to file the response under seal to be filed and heard by June 22, 2022. As before, the scheduling order stated that it would be strictly enforced and that the failure to timely file a brief would result in the court assuming that the party did not have supporting authority for its position.

On June 29, 2022, defendant filed a purported brief in support of his opposition to plaintiffs' motion for summary disposition. However, as defendant admits on appeal, the brief actually contained a verbatim copy of plaintiffs' brief in support of summary disposition. The brief included a title designating it as defendant's opposing brief, included a conclusory prayer for relief in defendant's favor, and was signed by defendant's counsel. Having imported the entirety of plaintiffs' brief, defendant's filing also included a prayer for relief asking the court to grant summary disposition to plaintiffs on their claims. The next day, defendant attempted to file an amended brief, and the trial court apparently rejected the filing.[4]

The trial court entered a written opinion and order granting summary disposition in favor of plaintiffs. The trial court noted that defendant was given two opportunities to respond to plaintiffs' motion for summary disposition, and the only timely filed response concurred in

---

[2] See MCL 600.2919a.

[3] Plaintiffs' supplemental motion included the allegations and evidence regarding defendant's actions involving K-Tel, which were not previously part of plaintiffs' allegations because they only came to light during the course of the litigation.

[4] Defendant's rejected filing is not in the record.

plaintiffs' requested relief. The trial court reasoned that it had the authority to enter and enforce its scheduling orders and that summary disposition in favor of plaintiffs was warranted based on the parties' timely filings that were before the court. The court additionally stated that plaintiffs' uncontroverted evidence established defendant's liability for conversion, breach of fiduciary duty, and unjust enrichment, as well as the propriety of removing defendant as a director of Master Beat. Accordingly, the trial court awarded treble damages,[5] prejudgment interest, costs and fees pursuant to MCR 600.2919a; ordered defendant to withdraw his royalty claim from Sound Exchange, to not access any Master Beat account, and to cease acting on behalf of Master Beat; and removed defendant as a director of Master Beat. The trial court reserved the issues of prejudgment interest, costs, and attorney fees for postjudgment proceedings.

Defendant subsequently filed a motion for reconsideration, or to correct pleading, or for relief from judgment. In the motion, defendant's new counsel blamed the filing error on the short timeframe between when she took over the case and when the response was due, her own illness as the deadline approached, and the failure of her paralegal who, instead of filing the brief prepared by defendant's former counsel as instructed, filed a copy of plaintiffs' brief. Regarding the merits of plaintiffs' claims, defendant argued that he could not convert funds that belonged to him.

The trial court denied the motion for reconsideration because defendant had failed to demonstrate a palpable error by which the court was misled, and not established that a different disposition would result from the correction of any error, had only raised arguments that could have been or were argued previously. The trial court ruled that defendant abandoned his request for leave to correct the pleadings because defendant failed to adequately brief the issue. The trial court denied defendant's request for relief from judgment because a mistake by an attorney is not grounds for granting such relief.[6] This appeal followed.

## II. STANDARD OF REVIEW

A court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record leave[s] open an issue upon which reasonable minds might differ." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citation omitted; alteration in original).

"This Court reviews for an abuse of discretion a trial court's decision to decline to entertain motions filed after the deadline set forth in its scheduling order." *Kemerko Clawson LLC v RXIV Inc*, 269 Mich App 347, 349; 711 NW2d 801 (2005). Whether to award treble damages for statutory conversion is a decision within the trial court's discretion. *Hoffenblum v Hoffenblum*,

---

[5] Specifically, the trial court awarded a judgment of "$77,437.26, trebled to $232,311.78, plus applicable prejudgment interest, costs and fees pursuant to MCR 600.2919a."

[6] In a separate order, the trial court awarded the amounts of prejudgment interests, costs, and attorney fees requested by plaintiffs.

-4-

308 Mich App 102, 117; 863 NW2d 352 (2014). We also review for an abuse of discretion a trial court's decision on a motion for relief from judgment. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 404; 651 NW2d 756 (2002). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012). This Court reviews de novo, as questions of law, issues involving the interpretation of statutes and court rules. *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002).

## III. SUMMARY DISPOSITION

Defendant first argues that the trial court erred when it decided plaintiffs' motion for summary disposition without allowing defendant to amend his timely filed response to plaintiffs' motion to include arguments in opposition to plaintiff's summary disposition motion.

Under MCR 2.401(B)(2)(a)(*ii*), the trial court "shall establish times for events and adopt other provisions the court deems appropriate, including . . . the amendment of pleadings, adding of parties, or filing of motions . . . ." The trial court has discretion under this rule "to decline to entertain motions beyond the stated deadline." *Kemerko Clawson*, 269 Mich App at 349. When a party violates a scheduling order, it is within the trial court's discretion to impose a sanction on the party. *Duray Dev LLC v Perrin*, 288 Mich App 143, 164; 792 NW2d 749 (2010). The fact that the sanction may effectively operate as a dismissal under particular circumstances does not prohibit a court from imposing the sanction. *Id*. A trial court's discretionary decisions in this context are entitled to deference, and appellate courts are not to substitute their judgment for that of the trial court on such matters. *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227-228; 600 NW2d 638 (1999); *Edi Holdings LLC v Lear Corp*, 469 Mich 1021; 678 NW2d 440 (2004). "An abuse of discretion involves far more than a difference in judicial opinion." *Alken-Ziegler*, 461 Mich at 227.

Here, the trial court entered scheduling orders providing deadlines applicable to defendant's response to plaintiffs' motion for summary disposition, and these scheduling orders explicitly warned that they would be strictly enforced by the court and that a party's failure to timely file briefs in accordance with the scheduling orders would result in a presumption that the party's position was not supported by legal authority. Defendant failed to sufficiently comply with these deadlines *twice*. The trial court exercised its discretion to permit defendant to properly file a timely responsive brief after defendant's first failure.

When the second deadline arrived, defendant filed a copy of plaintiff's brief instead of his own, yet this filing contained the proper date and the signature of block of his attorney. The attorney's signature constituted a certification that she had "read the document," that the document was "well grounded in fact and . . . warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law," and that the document was "not interposed for any improper purpose . . . ." MCR 1.109(E)(5). "A party is responsible for any action or inaction by the party or the party's agent," including the neglect of a party's attorney within the litigation. *Alken-Ziegler*, 461 Mich at 224-225. Defendant's counsel did not take any steps before the deadline to move the court for additional time in light of any difficulties that may have arisen.

Under these circumstances, defendant has not demonstrated that the trial court abused its discretion by declining to permit the filing of a corrected brief after the deadline imposed by the scheduling order had passed. *Kemerko Clawson*, 269 Mich App at 349; *Alken-Ziegler*, 461 Mich at 227-228; *Edi Holdings*, 469 Mich 1021. Furthermore, on the record before the trial court in light of the lack of a properly and timely filed responsive brief, the trial court did not err by granting plaintiffs' motion for summary disposition. *El-Khalil*, 504 Mich at 159.

## IV. TREBLE DAMAGES

Defendant next asserts that the trial court committed reversible error by awarding treble damages without an adequate explanation.

MCL 600.2919a allows a plaintiff to recover treble damages in cases of embezzlement or conversion. The statute provides as follows:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.
>
> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

Treble damages are "designed to penalize or punish dishonest defendants," and the decision whether to award treble damages under MCL 600.2919a is discretionary. *Hoffenblum*, 308 Mich App at 117 (quotation marks and citation omitted). Here, the trial court awarded treble damages consistent with defendant's filing of a brief that consisted of a retyped version of plaintiffs' brief and included a prayer for relief asking for treble damages under the statute. An appellant cannot demonstrate error requiring reversal predicated on an error to which appellant "contributed by plan or negligence." *Farm Credit Servs of Mich Heartland, PCA v Weldon*, 232 Mich App 662, 683-684; 591 NW2d 438 (1998). Defendant has thus not established error requiring reversal. Furthermore, defendant has not provided any argument explaining why treble damages were inappropriate under the circumstances of this case. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted). We deem defendant's argument abandoned.

Moreover, the record indicates that defendant unilaterally diverted royalty payments from Master Beat to himself and personally withdrew $20,000 from Master Beat's bank accounts

because he believed that he was rightfully entitled to these funds. Rather than following proper procedures for resolving his apparent disputes with Master Beat and his fellow band members over his compensation, defendant took matters into his own hands and took funds from the corporation because he personally believed that it was his right to do so. Defendant does not deny taking these actions and has instead maintained throughout this litigation that his actions were justified.

There is no question that a disgruntled corporate director is not entitled to resolve his perceived grievances with the corporation by resorting to "self-help" and taking corporate assets "against the will and direction of the governing body of the corporation," even if he believes he is entitled to those assets. *Mahlen Land Corp v Kurtz*, 355 Mich 340, 353; 94 NW2d 888 (1959). The trial court in this case cited the evidence of defendant's theft to support its judgment against defendant in this case. Defendant has not demonstrated on appeal that the trial court abused its discretion by awarding treble damages under MCL 600.2919a to penalize defendant's dishonest conduct. *Hoffenblum*, 308 Mich App at 117.

## V. RELIEF FROM JUDGMENT

Finally, defendant argues that the trial court abused its discretion when it denied him relief from judgment under MCR 2.612(C)(1)(a) and (f).

MCR 2.612(C)(1) provides in pertinent part as follows:

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

\* \* \*

(f) Any other reason justifying relief from the operation of the judgment.

This Court has stated that "MCR 2.612(C)(1)(a) was not 'designed to relieve counsel of ill-advised or careless decisions.'" *Limbach v Oakland Co Bd of Co Rd Comm'rs*, 226 Mich App 389, 393; 573 NW2d 336 (1997) (citation omitted). Attorney error, although it may justify a court's decision to grant relief under MCR 2.612(C)(1), is "not the type of mistake warranting reversal of a trial court's denial of relief." *Id*. (reaching the same conclusion with respect to both MCR 2.612(C)(1)(a) and (f)). In this case, the error committed by defendant's new counsel in responding to plaintiffs' motion for summary disposition does not establish the type of mistake or extraordinary circumstances that would lead us to conclude that the trial court's decision to deny defendant's motion for relief from judgment was outside the range of reasonable and principled outcomes. *Limbach*, 226 Mich App at 393. The trial court's decision thus was not an abuse of discretion. *Yee*, 251 Mich App at 404.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra